IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MICHAEL HARRELL, *
Plaintiff
*
v. CIVIL ACTION NO. DKC-13-2722
*
WARDEN FRANK BISHOP, et al.,
Defendants *
******

**MEMORANDUM**

On September 16, 2013, Plaintiff, an inmate presently incarcerated at the Western Correctional Institution (WCI), filed a self-represented complaint stating that he was denied medical care when Janice Gilmore denied him a wheelchair pusher and prevented him from being transferred to the Patuxent Institution. ECF No. 1, p. 4. Additionally, Plaintiff states that Defendant Trenum advised his stepbrother that Plaintiff would receive a wheelchair pusher. *Id*. Plaintiff alleges that on August 9, 2013, Warden Bishop would only assign Plaintiff to the "Non-design job bank duties." Plaintiff states he was discriminated against due to his disabilities in that he is unable to earn diminution of confinement credits because he cannot be assigned to a job. *Id*.

Pending are the motion of Defendants Warden Frank Bishop, Nurse Manager Charlene Trenum, and Medical Administrator Janice Gilmore Dismiss, or in the alternative for Summary Judgment. ECF Nos. 17 & 19. Plaintiff has responded (ECF No. 24) and Defendants Trenum and Gilmore have replied. ECF No. 25. Upon review of the papers and exhibits filed, the Court finds an oral hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons stated below, the dispositive motions filed by Defendants will be granted.

Standard of Review

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion, "[b]y its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

In *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether

there is a genuine issue for trial." A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

Analysis

A. Respondeat Superior

Plaintiff's claims against Medical Administrator Gilmore and Warden Bishop are based solely upon the doctrine of respondeat *superior*, which does not apply in §1983 claims. *See Love-Lane v. Martin*, 355 F. 3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under §1983). Instead, there may be liability on the part of supervisory officials "premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F. 3d 228, 235 (4th Cir. 2001), citing *Slakan v. Porter*, 737 F. 2d 368, 372 (4th Cir. 1984). Supervisory liability under § 1983 must be supported with evidence that (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in

conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff, (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices, and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F. 3d 791, 799 (4th Cir. 1994).

Here, Plaintiff's claims against Gilmore and Bishop premised on the theory of supervisory liability fail as the Plaintiff has pointed to no action or inaction on the part of Gilmore or Bishop that resulted in a constitutional injury. Gilmore and Ottey aver that Gilmore is the regional administrator for Wexford Health Services. ECF No 27, Ex. 2 & 3. Gilmore avers that she has never treated or evaluated Plaintiff. *Id*. She further avers that she was not involved in the decision to provide Plaintiff a wheelchair pusher or the decision to house him at the Patuxent Institution. *Id*. As she was not a direct medical provider to Plaintiff, he cannot sustain his claim of deliberate indifference as to Gilmore and she is entitled to summary judgment. Plaintiff's claim against Gilmore focuses on the delivery of primary health care. These claims are properly asserted against the direct health care provider(s) during the time at issue.[1] Plaintiff's claim against Bishop focuses on his assignment to a prison job. Such a claim is properly asserted against correctional staff responsible for such assignments, rather than the Warden of the institution.

B. Eighth Amendment

The Eighth Amendment prohibits "'unnecessary and wanton infliction of pain' by virtue of its guarantee against cruel and unusual punishment." *Gregg v. Georgia*, 428 U.S. 153, 173 (1976). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized

[1] Mere disagreement with a course of treatment does not provide the framework for a federal civil rights complaint. *See Russell v. Sheffer*, 528 F.2d 318 (4th Cir. 1975).

by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F. 3d 630, 633 (4th Cir. 2003) citing *Wilson v. Seiter*, 501 U.S.294, 297 (1991). In order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed either to provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The subjective component requires "subjective recklessness" in the face of the serious medical condition. *Farmer*, 511 U.S. at 839-40. "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk." *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), quoting *Farmer*, 511 U.S. at 844. If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted." *Farmer*, 511 U.S. at 844. Reasonableness of the actions taken must be judged in light of the risk the defendant actually knew at the time. *Brown* 240 F.

3d at 390; citing *Liebe v. Norton,* 157 F. 3d 574, 577 (8th Cir. 1998) (focus must be on precautions actually taken in light of suicide risk, not those that could have been taken).

"[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference." *Johnson v. Quinones,* 145 F. 3d 164, 166 (4th Cir. 1998). Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present. *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge). Mere disagreement with a prescribed course of treatment is insufficient to establish an Eighth Amendment claim of deliberate indifference. *See Russell v. Sheffer,* 528 F. 2d 318, 319 (4th Cir. 1975).

The record evidence demonstrates that Plaintiff suffers from mental health issues which have manifested in, among other things, functional paralysis of his lower extremities. ECF No. 17, Ex. 2. The record evidence further demonstrates that Plaintiff is regularly seen by psychiatric staff and physical therapy staff in an effort to treat and manage his psychiatric and physiological health problems. *Id*., Ex. 1 & 2. He has received a variety of pain medications to ease and manage his pain. He has been offered but refused physical therapy to rehabilitate his extremities.

Plaintiff was evaluated by physical therapy on September 19, 2012, due to complaints that he had lost the use of his lower extremities after a three month long hunger strike during which he was bedridden. *Id*., Ex. 1, p. 1. Plaintiff claimed he needed a wheelchair for mobility. Plaintiff's evaluation demonstrated an active range of motion in his upper extremities within normal limits and his trunk was within functional limits. No volitional movement of Plaintiff's lower extremities was noted; however, his passive range of motion was within normal limits. Plaintiff's lower extremities were flaccid but he demonstrated good muscle tone in his hips and

knees. Plaintiff was unable, however, to precipitate any motor activity or to stand and bear weight. *Id*. He was assessed as having functional paraplegia which is described by Defendants as a somatoform disorder wherein the patient is not intentionally feigning their symptoms but there is no neurological or other medical basis for same.[2] ECF No. 17, p. 6, FN 2.

On that same day, Dr. Ali Yahya placed an order to provide Plaintiff a wheelchair for six months. *Id*., Ex., 1, p. 2. Thereafter, Plaintiff received weekly physical therapy from September 19, 2012 through October 10, 2012. *Id*, Ex. 1, p. 3-9. Plaintiff fatigued easily but did not complain of pain. On October 15, 17, and 24, 2012, Plaintiff refused to attend physical therapy. *Id*., Ex. 1, p. 10-12. On November 1, 2012, Plaintiff signed off all physical therapy. *Id*., Ex. 1, p. 13.

On November 15, 2012, Plaintiff was seen by Dr. Yahya. Plaintiff requested a "wheelchair pusher"—another inmate assigned to push Plaintiff's wheelchair. Dr. Yahya did not find any indication supporting the necessity of a wheelchair pusher and declined the request. *Id*., Ex. 1, p. 14.

Plaintiff was evaluated by Physician's Assistant ("PA") Sparks on December 29, 2012, due to complaints of back pain which Plaintiff indicated came from wheeling himself in his wheelchair. *Id*., Ex. 1, p. 16-17. He renewed his request for a wheelchair pusher for outside his Housing Unit. The request was denied as Sparks did not find any clinical indication for same. Plaintiff was prescribed a muscle relaxant. *Id*.

Plaintiff was evaluated by Dr. Joubert on January 2, 2013. *Id*., Ex. 1, p. 18-19. Plaintiff again requested a wheelchair pusher. Dr. Joubert denied the request, finding no indication for same. *Id*.

---

[2] Plaintiff was regularly seen by mental health providers to address his mental health issues. *Id*., Ex. 2.

On January 15, 2013, Plaintiff was seen by PA Lum due to complaints of back pain. *Id*., Ex. 1, p. 20-21. Plaintiff's prescription for muscle relaxant was increased. Otherwise, his plan of care remained unchanged. *Id*. Plaintiff was seen by PA Sparks on January 30, 2013. His prescriptions were renewed. Plaintiff advised that his symptoms were controlled with the muscle relaxant. *Id*., Ex/ 1, p. 23-24. On February 19, 2013, Plaintiff's wheelchair order was renewed. *Id*., Ex. 1, p. 25.

On February 26, 2013, Plaintiff was interviewed by Hetty Charlene Trenum, R.N. as a result of an Administrative Remedy Procedure ("ARP") submitted by Plaintiff complaining of back, arm, and wrist pain caused by wheeling his own wheelchair and requesting a wheelchair pusher. *Id*., Ex. 1, p. 26. Trenum noted that Plaintiff had been advised by the physician that an x-ray of the wrist could be done. She sent an email to the physician inquiring as to the x-ray of the left wrist. *Id*.

On May 28, 2013, Plaintiff was seen by RN Opel due to complaints of arm and wrist pain. *Id*., Ex., 1, p. 27-28. Plaintiff was instructed to use warm compresses and take hot showers. He was also provided exercise instructions *Id*.

On June 10, 2013, Plaintiff was seen by Nurse Practitioner Mahler due to his complaints of back and wrist pain. *Id*., Ex. 1, p. 29-31. Plaintiff's prescription for muscle relaxer was renewed and he was prescribed Naprosyn. He was again advised to apply warm compresses and to increase his activity level. *Id*.

Plaintiff was found unresponsive in his cell on September 20, 2013 and was taken to the Bon Secour Hospital. *Id*., Ex. 1, p. 32-35. He was treated for an altered mental state due to an overdose of his muscle relaxer, Baclofen. *Id*., Ex. 1, p. 33-35.

On November 8, 2013, Plaintiff was evaluated by Dr. Ottey. Plaintiff renewed his request for a wheelchair pusher. Ottey determined that Plaintiff was not able to manipulate the wheelchair by himself and recommended a wheelchair pusher. *Id.*, Ex., 1, p. 36-37. He was assigned a wheelchair pusher later that same day. *Id.*, Ex. 1, p. 38.

Thus, the record reveals that, at the time Plaintiff was first provided a wheelchair, November of 2012, medical providers did not believe a wheelchair pusher was indicated. Over the course of the year several medical providers found no medical indication for a wheelchair pusher. Only after Plaintiff suffered a serious alteration in his mental state, in November of 2013, did Dr. Ottey find evidence that Plaintiff's physical condition had deteriorated to a point that he was unable to manipulate the wheelchair by himself and a pusher was necessary. *Id.*

Nurse Trenum was not responsible for Plaintiff's care. Plaintiff's only claim against Trenum is that she spoke to his brother and advised he would be provided a wheelchair pusher. Plaintiff has not alleged, and the record evidence demonstrates, that Trenum was not responsible for the provision of care to Plaintiff and was therefore not deliberately indifferent to his serious medical needs.

Moreover, neither of the named medical defendants, Trenum or Gilmore, are mental health providers. Only Plaintiff's mental health providers and the Department of Public Safety and Correctional Services have the authority to transfer inmates to the Patuxent Institution. *Id.*, Ex. 2.

Plaintiff, the non-moving party, must establish the existence of a genuine issue of material fact by presenting evidence on which a fact-finder could reasonably find in his favor. Plaintiff has failed to submit any evidence to support his claim that any of the named Defendants

provided constitutionally inadequate medical care.[3] The Affidavit of Plaintiff's brother (ECF No. 24, Declaration of Kevin Slaughter) that Gilmore, Trenum and Case Manager Davidson advised him that Plaintiff would receive a wheelchair pusher and be placed on the transfer list to Patuxent is insufficient to create a dispute as to a material fact.

C. Job and Prison Assignment

It is well established that prisoners do not have a constitutional right to access programs or to demand to be housed in one prison rather than another absent a showing of significant hardship. "[G]iven a valid conviction, the criminal defendant has been constitutionally deprived of his liberty to the extent that the State may confine him and subject him to the rules of its prison system so long as the conditions of confinement do not otherwise violate the

[3] Plaintiff raises for the first time in his Motion to Dismiss claims under the Americans with Disabilities Act. ECF No. 24.

To establish a prima facie case under Title II of the ADA, Plaintiff must show that: (1) he has a disability; (2) he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities for which he was otherwise qualified; and (3) the exclusion, denial of benefits, or discrimination was by reason of his disability. *See Constantine v. George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005); *Baird v. Rose*, 192 F.3d 462, 467 (4th Cir. 1999). States are obligated to make "reasonable modifications" to enable the disabled person to receive the services or participate in programs or activities. 42 U.S.C. § 12131 *et seq*. A reasonable modification does not require the public entity to employ any and all means to make services available to persons with disabilities. Rather, the public entity is obligated to make those modifications that do not "fundamentally alter the nature of the service or activity of the public entity or impose an undue burden." *Bircoll v. Miami-Dade County*, 480 F.3d 1072, 1082 (11th Cir. 2007).

To the extent Plaintiff claims that a denial of medical treatment violates his rights under the ADA, his claim fails. Although the Fourth Circuit has not addressed this issue in a published opinion, unpublished cases from this circuit and published and unpublished cases from other circuits indicate that a prisoner may not state a claim under the ADA for a lack of medical treatment. *See, e.g. Miller v. Hinton*, 288 Fed. Appx. 901 (4th Cir. 2008) (prison's alleged denial of access to colostomy bags and catheters by inmate, who was a paraplegic confined to a wheelchair who used such supplies for urinary bladder control, did not constitute disability discrimination in violation of ADA absent a showing that inmate was treated in that manner because of his disability); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (medical care provided to inmate for his diabetes could not be basis for RA action); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under RA and ADA were properly dismissed for failure to state claim as they were based on medical treatment decisions); *Spencer v. Easter*, 109 Fed. Appx. 571, 573 (4th Cir. 2004) (failure to provide timely refills of prescription drugs did not amount to an ADA violation where there was no showing that it was done based on prisoner's disability); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir.1996) (holding that the ADA is not "violated by a prison's simply failing to attend to the medical needs of its disabled prisoners. No discrimination is alleged; Bryant was not treated worse because he was disabled.").

Assuming Plaintiff is disabled within the meaning of the ADA, there is no evidence that Plaintiff was discriminated against either in the provision of medical care or in assignment to a prison job because of a disability. Accordingly, his ADA claim fails.

Constitution." *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *see also Sandin v. Conner*, 515 U.S. 472 (1995) (requiring an atypical and significant hardship as prerequisite to creation of a constitutionally protected liberty interest). Plaintiff has been placed on the list to be considered for transfer to Patuxent and advised that many factors come into consideration to determine such a transfer. ECF No. 24, Ex. F.

To show a civil rights violation with respect to a prison job assignment Plaintiff must show that the actions taken against him impacted on the exercise of a constitutionally protected right. Prisoners, however, do not have a constitutionally protected right to work while incarcerated, or to remain in a particular job once assigned. *See Awalt v. Whalen*, 809 F. Supp. 414, 416-17 (E.D. Va. 1992); *Altizer v. Paderick*, 569 F. 2d 812, 815 (4th Cir. 1978). Plaintiff has been placed on the waiting list for a prison job and will be eligible for a job when one becomes available.

On June 18, 2013, Rodney Davis, Correctional Case Management Specialist II, met with Plaintiff regarding Plaintiff being on "unassigned status." ECF No. 19, Ex. 2. At Plaintiff's request he was placed on Housing Unit 3's job bank sanitation waiting list. The Case Management Manual provides that if no job is available, the inmate is to be placed on a waiting list. Davis avers that in placing Plaintiff's name on the waiting list he would be eligible for a sanitation job in his housing unit when his name came up on the list. *Id*.

Davis again met with Plaintiff on August 7, 2013, to conduct Plaintiff's annual security review. Davis advised Plaintiff that his job assignment would not be changed as per the DOC directives that an inmate cannot request a change in assignment more than once every six months. *Id.*, Ex. 2, Ex. 3, p. 6, Ex. 4 & Ex. 5. Davis avers that he did not discriminate against Plaintiff due to his disabilities. *Id.*, Ex. 2.

Plaintiff does not have a right to be housed in a particular prison or participate in a particular program. Accordingly, his claims regarding lack of job assignment and his desire to be housed at the Patuxent Institution must be dismissed.

Conclusion

For the reasons stated, summary judgment is granted in favor of Defendants. Plaintiff's Motion to Dismiss (ECF No. 24) shall be denied. A separate Order shall be entered in accordance with this Memorandum.

Date: July 2, 2014

/s/
DEBORAH K. CHASANOW
United States District Judge